## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,              :
                                       :
      Plaintiff,                      :
                                       :
  v.                                   :    Criminal Action No. 07-120-2-SLR
                                       :
MANLIO YOVANI MARTINEZ RODRIGUEZ,      :
                                       :
      Defendant.                      :

## RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE FOR LACK OF PROBABLE CAUSE OR REASONABLE SUSPICION

**NOW COMES** the United States of America, by and through its attorneys, Colm F. Connolly, United States Attorney for the District of Delaware, and Shawn A. Weede, Assistant United States Attorney for the District of Delaware, and hereby responds to Defendant's Motion to Suppress Evidence for Lack of Probable Cause or Reasonable Suspicion (D.I. 21), as follows:

1.      The defendant has been indicted on one count of transporting illegal aliens within the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and 8 U.S.C. § 1324 (a)(1)(B)(1), and one count of illegal entry into the United States, in violation of 8 U.S.C. § 1325(a)(1).

2.      In his one-page motion, the defendant asserts that all of the evidence in this case must be suppressed because Delaware State Police ("DSP") Trooper John Lloyd lacked both probable cause and reasonable suspicion to stop the white van that the defendant was a passenger in on August 5, 2007. (D.I. 21).

3.     The Government respectfully asserts that, in light of the totality of the circumstances, there was plainly reasonable suspicion for Trooper Lloyd to perform the vehicle stop in question. Accordingly, the defendant's motion should be denied.

## FACTUAL BACKGROUND OF THE VEHICLE STOP

4.     In the early afternoon of August 5, 2007, Trooper Lloyd was on duty, in uniform, and in a marked patrol vehicle. At approximately 12:18 p.m., he received a call from dispatch to respond to the Abby Medical Center, 1 Centurian Drive, Newark, Delaware for a "10-48" – i.e., a report of a burglary-type alarm. Trooper Lloyd had responded to at least two other burglary alarms at the medical center since his assignment to DSP Troop 6 in May of 2007. August 5, 2007, was a Sunday; due to his prior experience, as well as the dispatch call, Trooper Lloyd knew the Abby Medical Center to be closed for business that day.

5.     The Abby Medical Center is surrounded by a tall hedge. As such, it is generally not possible to view the parking lot of the medical center from the street, except through the single entrance/exit driveway. Approximately 16 minutes after receiving the call, at approximately 12:34 p.m., Trooper Lloyd arrived at Abby Medical Center and drove through the entrance; he then immediately observed a commercial-sized white Chevrolet van in the parking lot on the east side of the building, near some doors to the medical center. It was the only vehicle in the parking lot at the time.

6.     After he entered the parking lot in his marked DSP vehicle, the white van, initially at a standstill and facing the exit, started in motion towards the one entrance/exit of the medical center. As the van approached Trooper Lloyd, due to the alarm report and the surrounding circumstances, he believed that the van was possibly involved in a break-in/burglary of the Abby

2

Medical Center; therefore, he rolled down his window and put his hand out, indicating that the van should stop. The driver of the van – later identified as Janie Reyes-Marino – appeared to him to be nervous, and after rolling down her window, said repeatedly that "everything was fine" and that she was "just getting ready to leave." While she was making these statements to Trooper Lloyd, she continued to drive the van slowly towards the exit driveway. Trooper Lloyd then indicated again that she needed to stop her vehicle, after which she did so. Trooper Lloyd then pulled behind the vehicle in his patrol car and noticed that the van had out-of-state license plates.[1]

## LEGAL ARGUMENT

7.    The "'Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape.'" United States v. Goodrich, 450 F.3d 552, 558-59 (3d Cir. 2006) (quoting Adams v. Williams, 407 U.S. 143, 145 (1972)). Rather, "'it may be the essence of good police work to adopt an intermediate response,' i.e., to maintain the status quo with a brief stop that allows the police officer to investigate further the possibility of criminal involvement." Id. (quoting Williams, 407 U.S. at 145-46). Accordingly, under the doctrine articulated at Terry v. Ohio, 392 U.S. 1 (1968), "'an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is

---

[1]    After the vehicle stop, Ms. Reyes-Marino proceeded to give several conflicting stories regarding her travel to the medical center. It was later determined that there were ten (10) other individuals who were illegal aliens in the van. Both Reyes-Marino and Martinez-Rodriguez later were taken into custody, where they waived their Miranda rights and gave statements to agents of Immigration and Customs Enforcement. These events are not discussed in great detail, however, as the defendant has only challenged the initial stop of the van. (D.I. 21).

afoot.'" United States v. Valentine, 232 F.3d 350, 353 (3d Cir. 2000) (quoting Illinois v. Wardlow,

528 U.S. 119, 123 (2000)).

        8.    Reasonable, articulable suspicion is a "less demanding standard than probable

cause and requires a showing considerably less than preponderance of the evidence." Wardlow, 528

U.S. at 123. Accordingly, only a "'minimal level of objective justification' is necessary for a Terry

stop." United States v. Delfin-Colina, 464 F.3d 392, 396 (3d Cir. 2006). In performing this analysis,

a court must look at the totality of the circumstances, giving deference to the officer's experience

and knowledge of the nature and the nuances of the type of criminal activity in question. United

States v. Robertson, 305 F.3d 164, 167 (3d Cir. 2002)). This determination also includes making

"common sense judgments about human behavior." Id.

        9.    A common sense interpretation of the facts observed by Trooper Lloyd

clearly supports his decision to stop the van and investigate whether its occupants were involved

with a burglary of the Abby Medical Center. In summary, (a) Trooper Lloyd responded to a burglary

alarm at a medical center, to find (b) a white industrial-size van (obviously a vehicle capable of

transporting stolen goods), in (c) an empty parking lot that was largely secluded from the street (d)

at a time when the medical center is closed; further, upon his arrival, (e) the van immediately started

for the exit, and (f) the driver, when she got closer to Trooper Lloyd, appeared nervous and acted

evasively.  Given these facts, for Trooper Lloyd to simply permit the van to leave without

investigating further would be tantamount to "shrugging his shoulders" and thereby ignoring activity

and circumstances that clearly pointed to a possible crime in progress; the law requires no such

dereliction of duty. Goodrich, 450 F.3d at 558-59. Terry stops have certainly be found to be

4

constitutional under similar circumstances. See Id. at 560-63; see also United States v. Dawdy, 46

F.3d 1427, 1429-30 (8th Cir. 1995) (reversing order suppressing evidence from Terry stop of a car

in an otherwise deserted pharmacy parking lot after business hours where defendant attempted to

leave the scene upon observing police officer, and officer knew that there had been prior burglary

alarms at that pharmacy).

                    10.     Indeed, the Third Circuit has previously concluded that a variety of the

factors present in this case support a finding of reasonable suspicion.    First, the van was at the

location of a reported burglary alarm roughly 16 minutes after it was reported.  Such temporal and

geographical proximity to reported criminal activity militate "strongly in favor of the validity" of a

Terry stop.  Goodrich, 450 F.3d at 562 (holding that "it is clear to us that the geographical and

temporal proximity of [the vehicle the defendant was in] . . . to the scene of the reported theft in

progress is another important factor militating strong in favor of the validity of the stop.") (listing

cases).  Second, the van was the only vehicle in an otherwise secluded parking lot at the time that

Trooper Lloyd arrived on the scene.    "The absence of any other vehicles in the area" in such

circumstances supports "the reasonable belief that the occupants of the vehicle" were connected to

the burglary alarm in question.  Id. at 563.  Third, the fact that the van initially attempted to drive

away from the scene upon seeing a marked DSP vehicle, coupled with the driver's nervous behavior,

certainly supports Trooper Lloyd's decision to stop the van to investigate further.  E.g., Valentine,

232 F.3d at 357 ("In evaluating the totality of the circumstances, we must also take into account that

Valentine and the two men with him immediately began walking away from the patrol car when it

arrived. Walking away from the police hardly amounts to the headlong flight considered in *Wardlow*

and of course would not give rise to reasonable suspicion by itself, even in a high-crime area, but it

is a factor that can be considered in the totality of the circumstances.  As the Supreme Court recently

said, 'nervous, evasive behavior is a pertinent factor in determining reasonable suspicion.'") (citing

Wardlow, 528 U.S. at 124).

## CONCLUSION

**WHEREFORE,** the United States requests that the Court deny defendant's Motion to

Suppress Evidence for Lack of Probable Cause or Reasonable Suspicion.[2]

Respectfully submitted,

COLM F. CONNOLLY
UNITED STATES ATTORNEY

BY:   /s/ Shawn A. Weede
Shawn A. Weede
Assistant United States Attorney

Dated:  November 29, 2007

---

[2]      The Government respectfully reserves the right to file a Memorandum of Law in
support of its response after the completion of any evidentiary hearing in this matter.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,          :
                                   :
              Plaintiff,           :
                                   :
       v.                          :        Criminal Action No. 07-120-2-SLR
                                   :
Manlio Yovani Martinez-Rodriguez,  :
                                   :
              Defendant.           :

## CERTIFICATE OF SERVICE

I, Jennifer Brown, an employee in the Office of the United States Attorney, hereby certify under penalty of perjury that on November 29, 2007, I electronically filed:

## RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
## EVIDENCE FOR LACK OF PROBABLE CAUSE
## OR REASONABLE SUSPICION

with the Clerk of Court using CM/ECF.  Said document have sent via U.S. Mail to the following:

Jose L. Ongay, Esquire
521 South Second Street
Philadelphia, Pa. 19147

                                        /s/Jennifer Brown
                                        Jennifer Brown